This is a recording of the meeting between the U.S. Embassy in the Philippines and the U.S. Embassy in the Philippines.  This is a recording of the meeting between the U.S. Embassy in the Philippines and the U.S. Embassy in the Philippines. Next case is CAP Co., Ltd. v. McAfee, 2017-17-87-88. Mr. Wecker, when you're ready. Good morning, Your Honors. May it please the Court. This patent had a very concrete problem that it was addressing at the time of the invention. It's related to the emergence of applications which acted as servers in what would be normally the client's computer, the user's computer that normally acts as a client. In that context, the computer and its firewall needed to be set up to accept incoming communications from anywhere. Let me just, as an initial matter, if we agree with the Board's claim construction, then you agree that the Prior Art disposes every limitation under that construction, correct? That's correct. The error that the Board made in this case was a claims construction that was inconsistent with the plain meaning of the term, was inconsistent with the file history, in particular some disclaimers of the configuration of the firewall that required that the server port information particularly be automatically detected and stored in what the patent calls internal permitted port storage, entirely automated process, no intervention of a system administrator or the user. As the briefing lays out, the critical piece here is does the invention describe, does the claim describe an invention in which not only does the storage of the port information occur automatically, but also the determination of what information did it store? Is that the step of extracting the port information? Right. In the claim language, it's... It just says extracting the server port information, right? Right. It doesn't say automatically extracting the server port information. In some of the claims, such as claim one, it has a port monitoring module that extracts the information about the server. But the automatically term only appears in the storing step, right? Automatically, that word appears in connection with the last step of storing. But the file history makes it clear that the automation part of it is the entire registering of that server port information to tell the firewall, these are permitted communications. And throughout the file history. And even in this case before the board, the McAfee agreed that the portion of the invention that relates to identifying programs that would be stored in internal program storage, thus being trusted programs, could be automated. It could involve some user intervention, like see a screen that says, is your web conferencing application permitted? And the user would say yes. So that first step of whether programs are trusted or not allows for user intervention. It doesn't require it, but it allows for it. But what the patent is absolutely clear about, what the file history is absolutely clear about... Well, I'm not so sure the file history is absolutely clear about much. And I'm not even sure what you want us to glean from the file history. What the file history explains is that this is designed for inexpert users who can't find the server port information. And the file history explains that the system must therefore find and store that server port information. There's a particular quote. Are you saying that the port information has to be extracted and stored at the same moment that the user adds the program? No. There can be a period of time where the user is installing the application and agreeing that this application should be a permitted application. At some point, very shortly after that, in order for the application to actually become active and start listening for communications, at that point, then that server port information needs to be included in the firewall. Otherwise, the communication will just fail. And that was the whole point of the patent, is to allow those communications to make it through the firewall so that the application can respond to them appropriately. So it's not some instantaneous nature, but it certainly has to be before the server application becomes active, because the whole point of the application is to receive these incoming communications from outside. Isn't one of the issues you're appealing the construction of adding a program? Right. And your view is that it excludes copying known programs, and why is that so? First, there's the issue of what a program is, because the patent is clear that different versions of the same program are to be treated as different applications. So you might be updating a program. And in that sense, it may not be a new program, but it's certainly going to be a new set of requirements to configure the firewall to make sure that that particular application's inbound communications are accounted for. So the program list is updated, but if you get a new port number because of the updating of the software, that would be adding a program, right? Right. A program would be defined in this patent as the entire set of functions of that program, where included in that is how it communicates to the outside, which server ports it uses, and which protocols, and so forth. So each time a program is changed, in even a slight way, it could be a new program. The patent's requirements about adding programs to the list of permitted programs is to make sure that the firewall is configured properly to allow those communications through. But I don't understand how that, the very disclosure in respect that we just discussed, doesn't cut against the proposed construction that you have given for adding a program. The proposed construction simply being that a new program is being added to the list of permitted programs. Right, and you argued that... By extracting information about that program. Right, but you argued that it had to be completely new, and that it couldn't encompass something where you essentially have something in pre-existing software, but it has a new name. Right, so the dispute... Isn't that very disclosure that we just talked about completely inconsistent with that? I don't believe so. The issue with respect to Yadav and Freund was that they don't deal at all with automatic rules creation of the nature that this patent deals with. And so a new program... What they do is they already have their set of rules, and in Yadav it's called an application-specific rule. It might be on the central server, it might be on the client, so it might go to the central server and copy it over to the client. But there's already a rule there, and that cannot serve the purpose of this patent, which covers the issue of an entirely new server application being loaded on the computer and programming the firewall so that it can accept the inbound communications. Where in the specification does it support the notion that this copying can't be consistent with adding something to the program list? I think it's the use throughout the specification of the word extract. It's talking about the port monitoring unit extracting the information by doing network, by doing hooking so that you understand what's going in and out. When the server is loaded and installed, it presumably makes a call on the network communication software in the operating system. The hooking process will see that call, will extract the server port information, the information about the program, and all of that is a process that is contrary or different than just copying from one location to another. In particular, the claim language adds a program to the list by extracting information about the program, the list being the list of programs permitted by the firewall. In the context of Yadav, you have a bunch of programs that are permitted by the firewall that already reside either locally on the client computer or in the centralized computer and they're just being copied. You don't know how those rules were created. They could have been created by a system administrator inputting the server port information. Well into your rebuttal time, you can continue or you can save it. If there's no further questions at the moment, I'll reserve my time. Mr. McFarland. Thank you, Your Honor. Jonathan McFarland from Perkins Coie on behalf of McAfee. And so I'd like to start out by noting several words that were used to describe the claims that are not in the claims themselves during the argument just now. So automatic rules creation, entirely new server application, and automatically detecting and storing. Automatically storing is in the claims. Automatically detecting is not. So starting with the adding a program limitation, I think it would be helpful to talk about what is the permitted program list that the board found. So in the board's opinion, if you look at figure three of Yadov, the permitted program list is not the policy itself that is pre-existing and may be existing on a remote server. The permitted program list, if you look at that on appendix 57, is formed once the application rule enforcer compares an application. So when an application is invoked, the application rule enforcer compares that to the policy and then it extracts that information from the policy and saves it on a local cache. And that extracted information about the program, including the program name, that's saved in the local cache is the permitted program list. And so it's not, once again, it's not the policy itself. And there's no language in the claims that precludes, that requires a new program or a program that has never been trusted before. It seems that your friend on the other side is really arguing that you can't construe these terms without understanding their connection to the extraction limitation. Is that fair? I believe that is what the argument is. I will say that when I read the red brief, and so in our brief, we address the extraction term. And when I read the red brief, I felt like we were talking past each other a little bit. Because we didn't quite... You read the red brief? I'm sorry. I read the red brief. I apologize. Okay. I'm sure you read the brief multiple times. I shouldn't use colors when I don't have them in front of me. No, but I think that the... So we argued a lot about whether extraction had to be automatic or not. There also was... I felt like there's an argument that the extraction step is related to the program, the additional program step. And the board addressed that question as well. The board made clear that, once again, the two steps are separate. And the adding to the permitted program list is completely separate from the list of storing the permitted port list. And if you look at Yadov, for example, the application rule enforcer is what creates the permitted program list. It actually extracts the port from the program. Well, in fairness, automatically storing, it says automatically storing by the firewall the extracted information. Yes. So doesn't the extracted information sort of modify what's automatically stored? Yes. And the extracted information, so we have the claim language, if we're looking at Claim 7 on the inside cover of the red brief, is extracting information about the server ports. And so it's automatically storing the information that was extracted about the server port. And so that's not the information. That's not the permitted program list. And so the extracting function, which we have labeled as 7C, is relating, once again, to the ports. And if you look at how Yadov works, the application rule enforcer does exactly that. So when an application sends a network IO request, it grabs the port, the server port that it's requesting. It extracts that. So Yadov is actually automatically extracting as well. And then it sends that to the network traffic enforcer to add to the permitted program list if it's authorized. And so even in the prior art, the extracting, our point is that the extracting term doesn't have to be automatic. The prior art actually does it automatically anyways, as it relates to the port limitation. Which brings me to the rule creation point. So as to both limitations, Mr. Wecker has argued that these have to happen during rule creation. And as we pointed out in our brief, the claims don't add a temporal limitation of, they don't even use the word rule creation. They don't add a temporal limitation. of the first time that you've added a network program is during a process of rule creation. We agree that there is a rule created by the claim in effect when you have the permitted port list at the end of the claim. That's what's regulating network traffic. And so there is, in effect, a rule being created by the end of the claim. But there's not some rule creation process that requires that when you add the program, it's the first time you've ever created a rule. What's your response to their reliance, their heavy reliance on a file of history? Well, Your Honor, there are two things about that. First of all, their argument is that there's prosecution disclaimer, which is a high bar. And so that must be clear and unmistakable. There was a lot of talk in the file history about registration, and it was, in my view, ambiguous. What was clear is at the end when you look at, and we outlined this in our brief, the changes that were made, if you look at our brief, the blue brief at 37 to 38, the changes it cited all related to registration that went to automatic storing. So the only thing that was actually clear to us that was a clear and unmistakable disclaimer was that when the applicant referred to registration in the file history and it changed that to automatic storing, it disclaimed non-automatic storing. But there was no other disclaimer in the file history, particularly not in a clear and unmistakable one. Anything further, Counsel? No, Your Honor. If you don't have any further questions, I'll yield the remainder of my time. Fine. Thank you. Mr. Wecker has two and a half minutes. So with respect to the last point, I'd like to further explain that the idea that automatic only modifies storing as opposed to the extracting and storing doesn't make any sense. From one skill in the art knows the way computers store information is entirely without user involvement. If you think about the only way that a user really gets involved in storing is you're in the middle of an application and you push a save button or save as. Yeah, so in that situation, the user might be considered participating. But in every other situation involving computer operation, information is being stored, taken out of storage constantly. And the idea that this patent, the automatic provision only applies to the storing and not to the extracting makes no sense. Because the very purpose of the invention was inexpert people would not know what the server port information is. So it would need to be extracted and stored without user intervention. The part of the file history that I was searching for during my opening was APPX 0441, where the applicant said, in contrast, applicant's invention enables server ports to automatically be registered in an internal permitted port storage based on the identity of the network communication program using the port. For example, a program registered in applicant's internal permitted program storage and requiring a new server port for operation, for example, after the program undergoes a software update, can automatically register the port without the intervention of a system administrator. Those statements the applicant made before you added the amendment for automatically storing the server port information, is that right? Right. You were arguing for a certain kind of conception of how the claims work, even though the claim didn't actually say it. Examiner nevertheless continued to press its rejection. And then finally in response to the continuance of that rejection, you added the limitation of automatically storing server port information. So there's an important distinction between the various amendments. There were a number of amendments made in response to these examiner rejections. The one that I think is important here is the change from the word register to store. Throughout the file history, it's clear that the invention involves automatic registration of server port information. When the wording was changed to automatically store... When you say change, you mean added, because there wasn't anything in the claim previously that referenced automatic anything, right? No. There was claim language about registering the server ports, which was deleted. Automatically? Other grammar changes were made. Did it say automatically register? No. It just said register. Okay. But they kept getting these rejections about, and responding to them, that no, we're not about just registering. We're about automatically registering. That's what I just read. Thank you, counsel. As you can see, the red light is on. That is our firewall. Thank you.